UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| SEYEDEHFARANGIS HOSSEINI,<br><br>Petitioner,<br><br>v.<br><br>WARDEN, Otay Mesa Detention Center,<br><br>Respondent. | Case No.:  25cv3802-LL-MSB<br><br>**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2241**<br><br>[ECF No. 1] |
|---|---|

Before the Court is Petitioner Seyedehrfarangis Hosseini's Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241. ECF No. 1 ("Pet."). Respondent filed a Return in opposition to the Petition [ECF No. 4], and Petitioner filed a Traverse [ECF No. 5]. For the reasons set forth below, the Court **GRANTS** the Petition.

**I.    BACKGROUND**

Petitioner Seyedehfarangis Hosseini is a citizen of Iran who entered the United States unlawfully in March 2025 and was detained and placed in expedited removal proceedings pursuant to 8 U.S.C. § 1225(b)(1). Pet. at 6; ECF No. 4 at 2. She claimed a fear of returning to Iran but did not receive her credible fear interview regarding a return to Iran until September 2025. Pet. at 6; ECF No. 4 at 2; ECF No. 5 ¶ 3.

/ / /

On September 10, 2025, Petitioner was issued a Notice to Appear, which initiated removal proceedings under 8 U.S.C. § 1229a. ECF No. 4 at 2. The Notice to Appear included a notation that it was issued after an asylum officer found that Petitioner demonstrated a credible fear of persecution or torture. ECF No. 4-1 at 7.

On December 9, 2025, an immigration judge denied Petitioner's request for a change in custody status, stating the court lacked jurisdiction to conduct a bond redetermination pursuant to *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025). ECF No. 4-1 at 11 (Ex. C). The immigration judge also found that if it was directed "to provide an individualized custody redetermination hearing in the future," it "would find [Petitioner] does not present a danger to the community and to address concerns regarding risk of flight, the court would set bond at the minimum amount of $1,500." *Id.* Petitioner remains mandatorily detained at Otay Mesa Detention Center under 8 U.S.C. § 1225(b)(2). ECF No. 4 at 3.

On December 29, 2025, Petitioner filed the instant Petition alleging that her prolonged detention violates the Fifth Amendment's Due Process Clause, the Immigration and Nationality Act, and the Administrative Procedure Act. Pet. at 6. She seeks a writ of habeas corpus directing Respondent to immediately release her from custody, or alternatively, a bond hearing. *Id.* at 7; ECF No. 5 at 14.

On January 9, 2026, Respondent filed a Return. ECF No. 4. On January 16, 2026, Petitioner filed a Traverse. ECF No. 5.

On January 21, 2026, Petitioner filed a status report stating that her merits hearing before an immigration judge was held on January 16, 2026, and she was granted asylum. ECF No. 6 at 2; ECF No. 6-1 at 2 (Ex. A). Petitioner also reported that she applied to be released on bond after asylum was granted, which was again denied by an immigration judge due to lack of jurisdiction, and the Department of Homeland Security reserved the appeal. *Id.* at 2; ECF No. 6-1 at 5. Petitioner states that she is requesting her immediate release from custody "due to her granted asylum and unforeseeable delay in the appeal process." ECF No. 6 at 2.

## II. LEGAL STANDARD

A district court may grant a writ of habeas corpus when a petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c); *Magana-Pizano v. I.N.S.*, 200 F.3d 603, 609 (9th Cir. 1999) ("28 U.S.C. § 2241 expressly permits the federal courts to grant writs of habeas corpus to aliens when those aliens are 'in custody in violation of the Constitution or laws or treaties of the United States.'"). In federal habeas proceedings, the petitioner bears the burden of proving his case by a preponderance of evidence. *Lambert v. Blodgett*, 393 F.3d 943, 970 n.16 (9th Cir. 2004); *Bellew v. Gunn*, 532 F.2d 1288, 1290 (9th Cir. 1976) (citations omitted).

## III. DISCUSSION

### A. Jurisdiction

Respondent argues that as a threshold matter, Petitioner's claims and requested relief are jurisdictionally barred under 8 U.S.C. § 1252(g). ECF No. 4 at 3–4.

Section 1252(g) states that "[e]xcept as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, . . . no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." 8 U.S.C. § 1252(g).

Respondent argues that Petitioner's claims are barred because they arise from DHS's decision to commence removal proceedings against her, which removes district court jurisdiction. ECF No. 4 at 4.

The Court finds § 1252(g) does not bar its jurisdiction over Petitioner's claims. The Supreme Court has explained that § 1252(g) does not bar jurisdiction for the "universe of deportation claims" but instead "applies only to three discrete actions that the Attorney General may take: her 'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders.'" *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999); *see also Ibarra-Perez v. United States*, No. 24-631, 2025 WL 2461663, at *2

(9th Cir. Aug. 27, 2025) ("The Supreme Court has instructed that we should read § 1252(g) narrowly."). The Supreme Court later reiterated this narrow application of § 1252(g): "We did not interpret this language to sweep in any claim that can technically be said to 'arise from' the three listed actions of the Attorney General. Instead, we read the language to refer to just those three specific actions themselves." *Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018) (citation omitted). Petitioner is not challenging the commencement of removal proceedings but is instead claiming a lack of legal authority to detain her for a prolonged time during proceedings. ECF No. 5 ¶ 27; *See Ibarra-Perez*, 2025 WL 2461663, at *2 (noting that a claim based on a lack of legal authority to execute a removal order due to a violation of a court order, the Constitution, INA, or international law, does not challenge the decision or action to execute a removal order). Therefore, § 1252(g) does not limit the Court's jurisdiction in this matter.

### B. Fifth Amendment Due Process Clause

Petitioner argues that her prolonged detention without a bond hearing violates the Fifth Amendment's Due Process Clause. Pet. at 6–7; ECF No. 5 ¶ 27.

Respondent contends there is no due process violation because Petitioner is detained pursuant to § 1225(b)(2), which mandates detention through the conclusion of the removal process, and that is all the process she will receive. ECF No. 4 at 5–7.

The Due Process Clause of the Fifth Amendment provides that no person shall be "deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Demore v. Kim*, 538 U.S. 510, 523 (2003) (citing *Reno v. Flores*, 507 U.S. 292, 306 (1993)). "At the same time, however, this Court has recognized detention during deportation proceedings as a constitutionally valid aspect of the deportation process." *Id.* The Ninth Circuit has questioned the constitutionality of certain immigration detention statutes, including § 1225(b):

> We have grave doubts that any statute that allows for arbitrary prolonged detention without any process is constitutional or that those who founded our

democracy precisely to protect against the government's arbitrary deprivation of liberty would have thought so. Arbitrary civil detention is not a feature of our American government. "[L]iberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755, 107 S. Ct. 2095, 95 L.Ed.2d 697 (1987). Civil detention violates due process outside of "certain special and narrow nonpunitive circumstances." *Zadvydas v. Davis*, 533 U.S. 678, 690, 121 S. Ct. 2491, 150 L.Ed.2d 653 (2001) (internal quotation marks and citation omitted).

*Rodriguez v. Marin*, 909 F.3d 252, 256–57 (9th Cir. 2018) (alteration in original).

The Court agrees with those courts that have found a noncitizen detained under § 1225(b) for a prolonged period without an individualized bond hearing may assert a constitutional right to due process. *See Sadeqi v. LaRose*, No. 25-CV-2587-RSH-BJW, 2025 WL 3154520, at *2 (S.D. Cal. Nov. 12, 2025) ("This Court agrees with the majority position that a petitioner detained under Section 1225(b)(1) may assert a due process challenge to prolonged mandatory detention without a bond hearing."); *Maksin v. Warden, Golden State Annex*, No. 1:25-CV-00955-SKO (HC), 2025 WL 2879328, at *3 (E.D. Cal. Oct. 9, 2025) ("Several courts including the Third, Sixth, and Ninth Circuit, as well as numerous district courts, have found that unreasonably long detention periods may violate the due process clause." (collecting cases)); *Abdul-Samed v. Warden of Golden State Annex Det. Facility*, No. 1:25-CV-00098-SAB-HC, 2025 WL 2099343, at *6 (E.D. Cal. July 25, 2025) ("[E]ssentially all district courts that have considered the issue agree that prolonged mandatory detention pending removal proceedings, without a bond hearing, 'will—at some point—violate the right to due process.'" (quoting *Martinez v. Clark*, No. C18-1669-RAJ-MAT, 2019 WL 5968089, at *6 (W.D. Wash. May 23, 2019), *report and recommendation adopted,* No. 18-CV-01669-RAJ, 2019 WL 5962685 (W.D. Wash. Nov. 13, 2019))); *Kydyrali v. Wolf*, 499 F. Supp. 3d 768, 772 (S.D. Cal. 2020) ("[T]he Court joins the majority of courts across the country in concluding that an unreasonably prolonged detention under 8 U.S.C. § 1225(b) without an individualized bond hearing violates due process."); *Banda v. McAleenan*, 385 F. Supp. 3d 1099, 1116–17 (W.D. Wash. 2019).

    Respondent relies on two cases to support his argument that § 1225(b)(2) and its provision for mandatory detention provides all the process that Petitioner is due, but the Court is not persuaded. ECF No. 4 at 6–8 (citing *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103 (2020), and *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206 (1953)). In *Thuraissigiam*, the habeas petitioner argued that the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 violated "his right to due process by precluding judicial review of his allegedly flawed credible-fear proceeding." *Thuraissigiam*, 591 U.S. at 138. The Supreme Court found that the petitioner, as an applicant for admission, was provided "the right to a determination whether he had a significant possibility of establishing eligibility for asylum" pursuant to § 1225(b), and that he had "only those rights regarding admission that Congress has provided by statute." *Id.* at 140 (internal quotation marks and brackets omitted) (quoting §§ 1225(b)(1)(B)(ii), (v)). The Court finds *Thuraissigiam* addressed a noncitizen's right to challenge *admission*, not detention. *See, e.g.*, *Sadeqi*, 2025 WL 3154520, at *2 ("This Court likewise agrees with those district courts that interpret *Thuraissigiam* as circumscribing an arriving alien's due process rights to *admission*, rather than limiting that person's ability to challenge *detention*."); *Aviles-Mena v. Kaiser*, No. 25-CV-06783-RFL, 2025 WL 2578215, at *4 (N.D. Cal. Sept. 5, 2025) (finding *Thuraissigiam* inapplicable to cases challenging detention).

    The Court finds *Mezei* is also distinguishable. *Mezei* involved a noncitizen who had been "permanently excluded from the United States on security grounds but stranded in his temporary haven on Ellis Island because other countries [would] not take him back." *Mezei*, 345 U.S. at 207. The Supreme Court recognized Mezei's exclusion for security reasons as different from noncitizens who may be released from detention on bond. *Id.* at 216 ("An exclusion proceeding grounded on danger to the national security, however, presents different considerations; neither the rationale nor the statutory authority for such release exists."). The facts are significantly different because Petitioner has not been excluded as a security risk, does not have a final order of removal, and has been granted asylum. *See*

*Rosales-Garcia v. Holland*, 322 F.3d 386, 413–14 (6th Cir. 2003) ("[T]he *Mezei* Court explicitly grounded its decision in the special circumstances of a national emergency and the determination by the Attorney General that Mezei presented a threat to national security."); *Kydyrali*, 499 F. Supp. 3d at 772 (finding *Mezei* inapposite to issue of whether prolonged detention without a bond hearing violates due process).

Respondent argues that applying the balancing test discussed in *Lopez v. Garland*, 631 F. Supp. 3d 870 (E.D. Cal. 2022), shows that Petitioner's detention has not become so unreasonably prolonged as to require a bond hearing or immediate release. ECF No. 4 at 8–10. Meanwhile, Petitioner contends that applying the three-factor balancing test discussed in *Mathews v. Eldridge*, 424 U.S. 319 (1976), shows that Petitioner's prolonged detention without a bond hearing violates her due process rights. ECF No. 5 ¶¶ 39–48.

Courts in the Ninth Circuit have used various factor tests to determine whether due process requires a bond hearing in immigration detention cases, including the *Mathews* and *Lopez* tests. *See e.g.*, *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206–07 (9th Cir. 2022) (assuming without deciding that the *Mathews* test applies in a case involving a due process challenge to immigration detention); *Loba L.M. v. Andrews*, No. 1:25-CV-00611 JLT SAB (HC), 2025 WL 3187577, at *1 n.1 (E.D. Cal. Nov. 14, 2025) (applying the *Lopez* test); *Maksim v. Annex*, No. 1:25-CV-00955-SKO (HC), 2025 WL 2879328, at *3–4 (E.D. Cal. Oct. 9, 2025) (applying the *Mathews* test). The Court will consider both tests.

### 1. The *Lopez* Factor Test

In the *Lopez* test, the court considers "the total length of detention to date, the likely duration of future detention, and the delays in the removal proceedings caused by the petitioner and the government." *Lopez*, 631 F. Supp. 3d at 879.

Petitioner has been in immigration detention since early March 2025, which is just over eleven months. Courts have found detentions of similar and shorter duration without a bond hearing weigh toward a finding that they are unreasonable. *See, e.g.*, *Sadeqi v. LaRose*, 2025 WL 3154520, at *4 (finding detention of over eleven months weighs toward a finding of unreasonableness); *Tonoyan v. Andrews*, No. 1:25-CV-00815-SKO (HC),

2025 WL 3013684, at *4 (E.D. Cal. Oct. 28, 2025) (over eleven months); *Masood v. Barr*, No. 19-CV-07623-JD, 2020 WL 95633, at *3 (N.D. Cal. Jan. 8, 2020) (nearly nine months); *Cabral v. Decker*, 331 F. Supp. 3d 255, 261 (S.D.N.Y. 2018) (over seven months). Therefore, the Court finds the length of detention weighs in favor of Petitioner.

Next, the Court considers the likely duration of future detention. Petitioner's asylum application was granted on January 16, 2026, and DHS reserved the appeal. Although it is unclear when removal proceedings will conclude, it will likely be a substantial amount of time because the government is likely to appeal. *See Maksim v. Annex*, No. 1:25-CV-00955-SKO (HC), 2025 WL 2879328, at *4 (E.D. Cal. Oct. 9, 2025) (finding determination of asylum application and subsequent appeal could take a substantial amount of time). The Court finds this factor weighs in favor of Petitioner.

Finally, the Court considers whether delays in the removal proceedings were caused by Petitioner or the government. Petitioner did not receive her credible fear interview about removal to Iran until six months after Petitioner was first detained and placed in expedited removal proceedings. The Court finds this delay factor weighs in favor of Petitioner.

### 2. The *Mathews* Factor Test

In the *Mathews* test, the court considers the following factors to determine whether a party's procedural due process rights have been violated: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335.

Considering the first factor, Petitioner has a strong private interest in her liberty. Freedom from detention is a fundamental part of due process protection. *See Hernandez v. Sessions*, 872 F.3d 976, 993 (9th Cir. 2017) ("[F]reedom from imprisonment is at the 'core of the liberty protected by the Due Process Clause.'" (quoting *Foucha v. Louisiana*,

///

504 U.S. 71, 80 (1992))). Therefore, the Court finds this factor weighs in favor of Petitioner.

Next, the Court considers the risk of erroneous deprivation of Petitioner's liberty interest and the probable value of additional procedural safeguards. "In evaluating the risk of erroneous deprivation in the context of noncitizen detention, the Ninth Circuit has looked to whether the detainee has a statutory right to procedural protections, such as individualized custody determinations and the right to seek additional bond hearings throughout detention." *Jensen v. Garland*, No. 521CV01195CASAFM, 2023 WL 3246522, at *6 (C.D. Cal. May 3, 2023) (citing *Rodriguez Diaz*, 53 F.4th at 1209–10). Petitioner has been mandatorily detained for over eleven months under 8 U.S.C. § 1225(b), which has no statutory right to seek an individualized custody determination. The statute allows for parole, but the Ninth Circuit has "note[d] that the discretionary parole system available to § 1225(b) detainees is not sufficient to overcome the constitutional concerns raised by prolonged mandatory detention because the parole process is purely discretionary and its results are unreviewable by IJs and release decisions are based on humanitarian considerations and the public interest" instead of the necessity of detention. *Abduraimov v. Andrews*, No. 1:25-CV-00843-EPG-HC, 2025 WL 2912307, at *6 (E.D. Cal. Oct. 14, 2025) (quoting *Rodriguez v. Robbins*, 715 F.3d 1127, 1144 (9th Cir. 2013)). Petitioner's two requests for a custody redetermination have both been denied by immigration judges who found they lacked jurisdiction because of Petitioner's mandatory detention under § 1225(b). It is also unclear when Petitioner's already lengthy detention will end. Therefore, the Court finds the risk of erroneous deprivation of Petitioner's liberty interest and the probable value of additional procedural safeguards, such as a bond hearing, is high. *Maksim*, 2025 WL 2879328, at *5 ("Thus, the probable value of additional procedural safeguards, i.e., a bond hearing, is high, because Respondents have provided virtually no procedural safeguards at all."). This factor weighs in favor of Petitioner.

///

Finally, the Court considers the government's interest in detaining Petitioner without a bond hearing and the fiscal and administrative burdens that a bond hearing would entail. "Providing petitioner with a bond hearing would not impede respondents' interest in effecting removal or protecting the public, as the purpose of the bond hearing is to determine whether petitioner is a danger or flight risk." *Jensen v. Garland*, No. 521CV01195CASAFM, 2023 WL 3246522, at *6 (C.D. Cal. May 3, 2023). A bond hearing before an immigration judge is not overly burdensome. *See Abduraimov*, 2025 WL 2912307, at *7 ("Courts generally have found that the cost of providing a bond hearing is relatively minimal, and there is nothing in the record before this Court demonstrating that providing Petitioner with a bond hearing would be fiscally or administratively burdensome."); *Lopez Reyes v. Bonnar*, 362 F. Supp. 3d 762, 777 (N.D. Cal. 2019) ("Considering . . . the minimal cost of conducting a bond hearing, and the ability of the IJ to adjudicate the ultimate legal issue as to whether Petitioner's continued detention is justified, the Court concludes that the government's interest is not as weighty as Petitioner's."); *Singh v. Barr*, 400 F. Supp. 3d 1005, 1021 (S.D. Cal. 2019). Therefore, this factor weighs in favor of Petitioner.

### 3. Remedy

With all factors weighing in Petitioner's favor, the Court finds that Petitioner's continued detention under § 1225(b) without a bond hearing has become unreasonable under both the *Lopez* and *Mathews* factor tests.[1] Petitioner is therefore entitled to a bond hearing. However, the Court finds that immediate release, rather than requiring another bond hearing, is the appropriate remedy in this case. At the December 9, 2025 hearing in which the immigration judge found he lacked jurisdiction to redetermine Petitioner's custody status, he made alternative findings. ECF No. 4-1 at 11. The immigration judge reviewed the evidence submitted by the parties and found that if he had jurisdiction and

---

[1] Because the Petition can be resolved on these due process grounds, the Court declines to address Petitioner's remaining grounds for relief.

was "directed to provide an individualized custody redetermination hearing in the future," he would find that Petitioner "does not present a danger to the community" and would set bond at the minimum amount of $1,500 "to address concerns regarding risk of flight." ECF No. 4-1 at 11. Petitioner has been in custody since that hearing, so her circumstances have not changed such that it would affect the immigration judge's findings. Other courts in this district faced with similar facts have found the following:

> Particularly given Respondents' "weighty" interest in the "efficient administration of the immigration laws," *Landon v. Plasencia*, 459 U.S. 21, 34 (1982), it does not make sense to require Respondents to set a new bond hearing before a potentially new immigration judge just to duplicate the same efforts taken at the [previous] hearing. Nor would this remedy prejudice Respondents. First, they have not contested the immigration judge's findings or argued that Petitioner poses a flight risk or danger to the community. Second, should Respondents wish to make those arguments, they may do so by appealing the immigration judge's decision to the Board of Immigration Appeals. *See* 8 C.F.R. §§ 1003.19(f), 1003.38(a); *Bui v. Holder*, No. 1:15-cv-0-636-JLT, 2015 WL 3903764, at *3 (E.D. Cal. June 25, 2015) (noting that these "regulation[s] demonstrate[ ] a clearly-established administrative scheme designed to address custodial determinations, a practice that includes an appeals process").

*Ruiz v. Noem*, No. 3:25-CV-03536-RBM-BJW, 2025 WL 3719888, at *2 (S.D. Cal. Dec. 23, 2025); *Nieto v. Casey*, No. 26-CV-0186-GPC-AHG, 2026 WL 125602, at *5 (S.D. Cal. Jan. 16, 2026) (quoting *Ruiz*, 2025 WL 3719888, at *2). The Court agrees with this reasoning and finds immediate release is the appropriate remedy.

## IV. CONCLUSION

For the reasons above, the Court **GRANTS** Petitioner's Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2241.[2] Respondent is hereby **ORDERED** to immediately release Petitioner from custody, subject to a $1,500 bond and the conditions of release set

---

[2] In her prayer for relief, Petitioner requests attorney's fees and costs under the Equal Access to Justice Act, which the Court **DENIES without prejudice**. Pet. at 7.

forth in the immigration judge's alternative findings [ECF No. 4-1 at 11–12]. The Clerk of Court shall enter judgment in Petitioner's favor and close this case.

**IT IS SO ORDERED**.

Dated:  February 10, 2026

_____
Honorable Linda Lopez
United States District Judge